## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HECTOR SAUL CASTRO-AGUIRRE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00782-TWP-TAB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER GRANTING MOTION TO VACATE CONVICTION AND SENTENCE ON
COUNT 1, DENYING MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255
AS TO COUNTS 2 AND 4, AND DENYING CERTIFICATE OF APPEALABILITY**

This matter is before the Court on Petitioner Hector Castro-Aguirre's ("Castro-Aguirre")

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Dkt. 1). Following a

trial by jury, Castro-Aguirre was found guilty of conspiracy to distribute methamphetamine and

cocaine (Count 1); engaging in a continuing criminal enterprise ("CCE") (Count 2); and conspiracy

to launder monetary instruments (Count 4). He was sentenced to life imprisonment on Counts 1

and 2, and 240 months on Count 4, to be served concurrently. Castro-Aguirre challenges his

convictions and sentence asserting that he was deprived of constitutionally effective assistance of

counsel. For the reasons explained below, the Motion is **granted** in that the conspiracy conviction

and sentence in Count 1 shall be **vacated**. The Motion is **denied** as to all other claims. In addition,

a certificate of appealability will not issue.

## I.  THE § 2255 MOTION

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal

prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343

(1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon

the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878−79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. <u>FACTUAL BACKGROUND</u>

On January 10, 2018, Castro-Aguirre was charged in a seventeen- defendant, multi-count Indictment involving a drug-distribution network.  Specifically, Castro-Aguirre was charged with conspiracy to distribute 500 grams or more of methamphetamine (mixture), and/or five kilograms or more of cocaine (mixture), in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(a), (b)(1) (Count 2); and conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 4).  *See United States v. Rojas-Reyes, et al.*, No. 1:16-cr-123-TWP-MJD-15 (S.D. Ind.) ("Cr. Dkt."), at Cr. Dkt. 416.  Attorney Andrew Borland was appointed as counsel. (Cr. Dkt. 304.) Castro-Aguirre proceeded to a jury trial along with co-defendants Rafael Rojas-Reyes, Jose Manuel Carrillo-Tremillo, and John Ramirez-Prado.  A jury convicted Castro-Aguirre on all three Counts.  (Cr. Dkt. 669.)

At his sentencing hearing, Castro-Aguirre's counsel objected to the offense conduct paragraph 8-27 of the presentence investigation report but had no objections to the guidelines calculations. (Cr. Dkt. 822 at 4). The Court grouped Castro-Aguirre's drug conspiracy counts (1

2

and 2) and found a base offense level of 38, because the offense involved more than 500 grams of methamphetamine mixture and more than 5 kilograms of cocaine mixture. *Id*. at 5. Two levels were added because the offense involved the importation of methamphetamine, pursuant to U.S.S.G. § 2D1.1(b)(5); two levels were added because he committed the offense as part of a pattern of criminal conduct engaged in as a livelihood, pursuant to U.S.S.G. § 2D1.1(b)(15)(E); and four levels were added because he was an organizer or leader of a criminal activity, pursuant to U.S.S.G. § 3B1.1(a). *Id*. at 6. Group 1 resulted in an adjusted offense level of 46. With respect to Count 2, the CCE conviction, the Court found the adjusted offense level at level 46. The third and final group was for Castro-Aguirre's money laundering conviction, the base offense was 46, and two levels were added because Castro-Aguirre was convicted under § 1956, pursuant to U.S.S.G. § 2S1.1(b)(2)(A), resulting in an adjusted offense level of 48. *Id*. at 6. Because the total offense level was more than 43, the offense level was treated as a level 43. *Id*. Castro-Aguirre had no known criminal history, so his criminal history score was zero. The Court found that under the guidelines, the penalty for count 1 was life in prison, the penalty for Count 2 was life in prison, and the penalty for Count 4 was 240 months imprisonment. *Id*. at 7. Irrespective of the sentencing guidelines, Castro-Aguirre faced a mandatory minimum sentence of life imprisonment for the CCE violation, as charged in the Second Superseding Indictment. 21 U.S.C. § 848(b). He was sentenced to life imprisonment on Counts 1 and 2, and 240 months on Count 4, with each count to be served concurrently. (Cr. Dkt. 762.)

Castro-Aguirre appealed, challenging (1) the admission of evidence of cell-site location information ("CSLI") and (2) the denial of the motion *in limine* to suppress evidence of his gang membership, including the admission of evidence about a kidnapping and murder. *United States v. Castro-Aguirre*, 983 F.3d 927, 939−42 (7th Cir. 2020). The facts of the case, as stated by the

Seventh Circuit, are as follows:

> The [four] defendants [who went to trial] all played active roles in a cross-country drug organization: Castro-Aguirre served as the head of operations; Ramirez-Prado handled logistics, including providing cars and hotels for distributors and couriers; Rojas-Reyes coordinated sales in Indianapolis; and Carrillo-Tremillo conducted sales in the northeast. [. . .]

> Castro-Aguirre coordinated shipments of methamphetamine—usually 30 pounds apiece—from a trailer park in Tucson, Arizona, to Avon, Indiana (a suburb of Indianapolis). Ramirez-Prado rented SUVs and booked hotels for couriers along the route. Once the packages reached their destination, Rojas-Reyes took over and sold the methamphetamine in Indianapolis.

> Castro-Aguirre also handled cocaine sales in New Jersey and New York. Ramirez-Prado and other couriers transported bulk quantities of cocaine from Arizona and Indianapolis to New York. There, Castro-Aguirre fronted the drugs to Carrillo-Tremillo, who would sell them and remit the proceeds to Castro-Aguirre. In much the same way, Castro-Aguirre furnished Carrillo-Tremillo with anywhere from 10 to 100 kilograms of cocaine on credit for distribution in Reading, Pennsylvania. Castro-Aguirre arranged for couriers to pick up the proceeds from his various sellers and deliver the cash to him in Arizona.

> The final trip to Reading proved to be the downfall of the organization. The deal started out routinely, when Castro-Aguirre fronted 100 kilograms of cocaine to Carrillo-Tremillo. The drugs made it to Reading, but alert law enforcement officers caught up with the couriers and stopped them near the Illinois-Missouri border. There the agents seized $2,400,000.

> That is just the bare outline of the operation. It had many moving parts, only some of which are important to this appeal. One key event involved the kidnapping and murder in 2016 of Angel Barrios-Moreno, who supplied the operation with drugs that he transported across the Mexican-U.S. border. The evidence indicated that leaders of the infamous Sinaloa Cartel had ordered the hit. They did so because Barrios-Moreno failed to pay a debt to the cartel after law enforcement officials seized a major drug shipment. The cartel was not forgiving: during one of Barrios-Moreno's trips in Mexico from Nogales to Sinaloa, members of the Sinaloa Cartel kidnapped Barrios-Moreno and two others—his nephew Adrian Barrios-Moreno and a friend Luis-Carlos Cebrero-Alvarez—and demanded a $500,000 ransom.

> When Castro-Aguirre learned of the kidnapping, he immediately started to raise money for the ransom. He sent couriers to pick up cash and drugs from Rojas-Reyes and Ramirez-Prado. Once he had collected $250,000, Castro-Aguirre sent couriers to make a partial payment on the ransom to a cartel member in New York. Despite these efforts, the cartel ultimately killed Barrios-Moreno, along with the other two men it had seized.

*Id.* at 932.

The Seventh Circuit affirmed, finding the CSLI evidence was admissible because law enforcement acted in good faith, and although the district court abused its discretion by admitting evidence about the kidnapping and murder, the error was harmless.  *Id.* at 934–35, 938–39.

### III. DISCUSSION

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011).  If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other.  *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To assess counsel's performance, the Court must "apply an objective standard of reasonableness considering all the circumstances."  *Bridges v. United States*, 991 F.3d 793, 803 (7th Cir. 2021).  "When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence," he must "'prove the motion was meritorious.'"  *Long v. United States*, 847 F.3d 916, 920 (7th Cir. 2017) (quoting *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005)).

On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different."  *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up).

It is fundamental that the § 2255 movant faces the burden of demonstrating both deficient performance and prejudice.  *See, e.g.*, *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel."); *Faucett v. United States*, 872 F.3d 506, 509

5

(7th Cir. 2017) ("Under . . . *Strickland* . . . , it was Faucett's burden to show that his attorney's performance was deficient and that he suffered prejudice as a result.").

In his motion and supporting brief, Castro-Aguirre argues that his counsel was ineffective for numerous reasons. The Court will address each of his claims in turn.

A.    <u>**Double Jeopardy**</u>

First, Castro-Aguirre argues that his attorney should have objected because his conspiracy count was a lesser-included offense of the CCE count, and therefore convictions for both offenses violated double jeopardy. He is correct. In *Rutledge v. United States*, 517 U.S. 292, 300 (1996), the Supreme Court held that conspiracy is a lesser included offense of CCE.

The Government concedes that trial counsel was ineffective for failing to make this argument. (Dkt. 18 at 10.) It argues, however, that while the sentence for Count 1 should be vacated, the conviction should remain. *Id*. The Government provides no rationale for why the conviction should stand. *See id.* In *Rutledge*, the court concluded that both the conviction and sentence must be set aside. 517 U.S. at 302–03 (noting that an assessment of $50.00 for both counts served as a collateral consequence and that therefore "the conviction amounts to cumulative punishment not authorized by Congress."). Here, too, the Court concludes that both the conviction and sentence for the conspiracy charge must be set aside. *Lanier v. United States*, 220 F.3d 833, 841 (7th Cir. 2000) (affirming district court's decision to vacate the lesser conviction for conspiracy rather than the CCE conviction and quoting *United States v. Boyd*, 131 F.3d 951, 954–55 (11th Cir. 1997): "'The proper remedy for convictions on both greater and lesser included offenses is to vacate the conviction and the sentence of the lesser included offense.'"). As discussed below,

because eliminating the conspiracy charge has no impact on Mr. Castro-Aguirre's mandatory life sentence for the CCE charge, there is no need to resentence him.

**B.** **Sufficiency of CCE Conviction**

Next, Castro-Aguirre argues that his attorney was ineffective in defending against the CCE charge.

The CCE statute has five elements: (1) a felony violation of the federal narcotics laws; (2) that is part of a "continuing series of violations" of the federal narcotics laws; (3) undertaken by the defendant in concert with at least five other individuals; (4) with respect to whom the defendant holds a supervisory, managerial, or organizational role; and (5) from which the defendant receives substantial income or resources.  21 U.S.C. § 848(c).

The statute also provides for a life sentence if the defendant is "the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders"; and if the enterprise involves specified drug quantities or generates specified receipts. In cases involving methamphetamine, those amounts are ten kilograms or $5 million dollars in a twelve-month period.  *See* 21 U.S.C. §§ 841(b)(1)(B)(viii); 848(s).

Castro-Aguirre raises three arguments challenging his CCE conviction: (1) that counsel should have challenged the jury instruction on the elements of the CCE conviction; (2) that the evidence that he was an organizer, supervisor, or manager of five or more other individuals was "clearly questionable"; and (3) that trial counsel should have challenged the evidence that he made $10 million in gross receipts during a twelve-month period.  The Court addresses each argument.

**1.** **Jury Instruction**

This Court's instruction about the continuing series of offenses element of the CCE offense, (Cr. Dkt. 666 at 41–42), tracked the Seventh Circuit Pattern Instruction issued in 2012, as well as

the Seventh Circuit Pattern Instruction that remains in effect today. *Pattern Criminal Instructions of the Seventh Circuit 2012 Ed.,* at 654*; The William J. Bauer Pattern Criminal Jury Instructions* (2023 updates), at 1028. The pattern instruction required the jury to find each of the offenses that constituted a continuing series of offenses beyond a reasonable doubt. *Id*. Because the Court correctly instructed the jury as to this Count, counsel was not deficient for lodging a frivolous objection. *See United States v. Marr*, 760 G.3d 733, 744 (7th Cir. 2014) ("We presume that the Pattern Criminal Jury Instructions for the Seventh Circuit correctly state the law[.]"); *Perez v. United States*, 286 F. App'x 328, 331−32 (7th Cir. 2008) ("Failure to raise a losing argument or pursue a futile motion . . . does not constitute ineffective assistance.").

**2.     Evidence Related to Supervisory Role**

Castro-Aguirre argues that trial counsel was ineffective for failing to challenge whether the trial evidence showed he supervised five or more persons as required to support the CCE conviction. He states, "Whether Mr. Castro acted as an organizer, supervisor or manager of five or more other persons in committing this series of violations is clearly questionable when analyzing the record thoroughly." (Dkt. 2 at 11.) Castro-Aguirre does not elaborate on why he believes the evidence was insufficient to show his leadership role in the organization, nor does he explain what his trial counsel could have done differently to avoid a conviction on this charge, so this argument is waived. *See M.G. Skinner & Associates Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Setting waiver aside, far from "clearly questionable," the evidence adduced at trial was overwhelming as to Castro-Aguirre's leadership role in each of the six predicate offenses alleged in the CCE count. At trial, the Government established that Castro-Aguirre supervised the drug

trafficking activities of nine people.  Castro-Aguirre's supervisees included Yesenia Samaniego, John Ramirez-Prado, Jesus Lopez-Acosta, Yesenia Andrade-Guillen, Ismael Hamilton, Victor Dominguez, and Francisca Encinas, all of whom transported large amounts of controlled substances and money across the United States at Castro-Aguirre's direction.  *See, e.g.,* Cr. Dkt. 846, Vol. 3 at 425−26, 466−67, 489 (testimony reflecting that Castro-Aguirre hired individuals to transport drugs); Cr. Dkt. 815, Vol. 4, *generally* (testimony about trips taken at Castro-Aguirre's direction); Cr. Dkt. 819, Vol. 8 at 1535 (testimony reflecting Castro-Aguirre directed individual to drive from Indiana to Ohio to collect drug proceeds). For example, the Government introduced evidence that Castro-Aguirre organized and directed Yesenia Samaniego and John Ramirez-Prado to transport 25 pounds of methamphetamine to Alonso and Agustin Gutierrez in Lufkin, Texas in July 2015.  The Government's evidence included direct testimony, hotel records, surveillance by law enforcement officers, and ultimately the seizure of the methamphetamine.  The Government offered similar evidence for approximately twenty separate trips during which Castro-Aguirre organized and directed the activities of other people who transported controlled substances and drug proceeds for him throughout the United States. *See Castro-Aguirre*, 983 F.3d at 938−39 (summarizing evidence).  Thus, counsel was not ineffective for failing to challenge the sufficiency of the evidence to support the CCE count.

### 3.    <u>Evidence Related to Gross Receipts</u>

Castro-Aguirre finally argues that counsel was ineffective for failing to argue to the jury that there was insufficient evidence that the criminal enterprise received $10 million in gross receipts to support the CCE conviction.  (Dkt. 1 at 11−12.)  But under the statute, to obtain a life sentence, the Government must prove that *either* the violation involved ten kilograms or more of a mixture or substance containing a detectable amount of methamphetamine *or* that the enterprise

received $10 million or more in gross receipts during a twelve-month period.   21 U.S.C.

§ 848(b)(2)(A), (b)(2)(B), (s) (emphasis added).   The Government elected to prove the violation

based on the amount of the methamphetamine, and because the statute reads in the disjunctive, it

did not need to prove that the enterprise earned $10 million.   Any argument or objection based on

this theory, then, would not have succeeded.   Counsel was not deficient for failing to make it.

*United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991).

## C.   <u>Leadership Enhancement to Conspiracy Count</u>

Castro-Aguirre argues his attorney should have objected to the leadership enhancement to

his conspiracy count because, alongside the CCE conviction, it constituted impermissible double

counting.   (Dkt. 2 at 12.)   In the context of guidelines sentencing, the term 'double counting' refers

to using the same conduct more than once to increase a defendant's guideline sentencing range."

*United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012).   "[D]ouble counting is generally

permissible unless the text of the guidelines expressly prohibits it."   *Id.*

Because the conspiracy count is being vacated, any challenge to the sentence calculation

based on double-counting is now moot.   That said, Castro-Aguirre argues in his reply that when

his conspiracy count is vacated, the guideline for his CCE count will change, and he must be

resentenced.   (Dkt. 22 at 6−7.)   He is mistaken.

Vacating the conspiracy count has no impact on the guideline range for the CCE violation,

as each Count was evaluated separately and governed by different guidelines.   *See* Dkt. 738, PSR

¶ 32 (explaining, "Count 2 is grouped with Count 1 pursuant to USSG § 3D1.2(a).   Because the

guideline for Count 2, § 2D1.5, calls for a base offense level of 4 plus the offense applicable to the

underlying offense, a separate guideline calculation is shown for Count 2.").   Under U.S.S.G.

§ 2D1.5, the base offense level for the CCE conviction was the greater of 38, or four plus the

offense level of the applicable to the underlying offense (excluding any Chapter Three adjustments). *Id.* at ¶ 41. Here, four plus the offense level applicable to the underlying offense (conspiracy to distribute methamphetamine) was greater (42), resulting in an adjusted offense level of 46. *Id.* at ¶¶ 41−46. That calculation was correct, so there is no viable objection that counsel could have made. *Perez*, 286 F. App'x at 331−32. Further, even assuming some error in the guideline calculation had been made, Castro-Aguirre was subject to a statutory mandatory minimum life sentence for the CCE under 21 U.S.C. § 848(b)(1), rendering any error in the calculation harmless. *Daniels v. United States*, 939 F.3d 898, 903−04 (7th Cir. 2019) ("Guidelines-calculation errors that don't affect a defendant's sentencing range are harmless as a matter of law.").

Castro-Aguirre is entitled to no relief on his CCE sentence.

**D.**   **Confrontation Clause Challenge to Cell-Site Location Information (CSLI) and Drug Quantity Evidence**

Castro-Aguirre argues that trial counsel was ineffective for failing to challenge the admission of CSLI evidence and drug quantity evidence under the Confrontation Clause at trial. (Dkt. 2 at 16−20.)

**1.**   **CSLI Evidence**

The cell-site location information evidence was used to corroborate witness testimony that Castro-Aguirre and his accomplices traveled from Arizona to California to meet with drug traffickers and to midwestern and northeastern United States to traffic drugs. This evidence was admitted through testimony from Drug Enforcement Agency ("DEA") Intelligence Analyst Kristin Schumacher ("Schumacher") who obtained certified CSLI records from the service providers for various cell phones and then performed the initial analysis of the cell site records to determine the phones' locations. Schumacher testified extensively on the fifth day of trial. *See* Cr. Dkt. 816, Vol. 5 at 869−977. She began by attesting that she had been employed by the DEA for 17 years

and served as an intelligence analyst in the Indianapolis office for 10 years. *Id.* at 869. She explained that her duties as an intelligence analyst involved interpreting cell phone data. *Id.* at 870.

Schumacher made clear that, although she was not an engineer, she came to understand how cell phones worked through her employment with the DEA. *Id.* She proceeded to explain that cell phones in use transmit information to towers; that cell phone companies log the phones' transmissions to specific towers; and that she could use those logs to infer a phone's approximate location (and therefore the user's location) at the time of a transmission. *Id.* at 870−74. After those preliminary matters, Schumacher explained how she linked cell phones seized in the investigation to the four defendants. Then, she explained that she used cell site records to determine where those phones were located at points in time. *See id.* at 918–21. She presented maps plotting those locations and explained that they showed routes that the defendants traveled in furtherance of the drug trafficking operation. *Id.*

Aside from her testimony that she learned about cell phone operations in her work, Schumacher did not testify about the basis for this knowledge and was not tendered as an expert. The defendants objected to use of cell phone data on grounds that it was obtained without a warrant, but the court overruled those objections. (*See* Cr. Dkt. 919). Schumacher's testimony about cell phone operations was otherwise received without objection.

The Confrontation Clause prohibits the introduction of testimonial statements by a non-testifying witness, unless the witness is unavailable to testify, and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington,* 541 U.S. 36, 51 (2004). A statement becomes "testimonial" where "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547

U.S. 813, 322 (2006).

Referring to the United States Supreme Court's decision in *Bullcoming v. New Mexico*, 564 U.S. 547 (2011), Castro-Aguirre contends that the admission of the CSLI evidence through Schumacher violated his rights under the Confrontation Clause because it deprived him of the ability to cross-examine a qualified expert witness regarding this evidence. *Bullcoming* held that, when the prosecution presents a forensic report at trial, an accused has the right to confront the analyst who made the report. *Id.* at 652.

Castro-Aguirre argues that his counsel should have objected to Schumacher's testimony because she was a DEA employee, not an employee of the cell phone company. In his view, *Bullcoming* required the Government to call an agent of the cell phone company to present the records and answer any questions about their integrity or how they were generated.

The CSLI data itself are not testimonial. "The Confrontation Clause does not forbid the use of raw data produced by scientific instruments, though the interpretation of those data may be testimonial." *United States v. Moon*, 512 F.3d 359, 362 (7th Cir. 2008) (discussing drug test data). In *United States v. Hill*, 63 F.4th 335 (5th Cir. 2023), the Fifth Circuit considered whether cell phone data was testimonial and concluded it was not. In that case, an agent for the Federal Bureau of Investigation reviewed cell phone records like those Schumacher reviewed, "edited [them] down to those portions he deemed relevant," and presented them as evidence of the defendants' conduct. *Id.* at 357. The Fifth Circuit held that the cell phone records "were non-testimonial, raw machine created data" not subject to the Confrontation Clause, and there was no problem with the agent testifying about information he derived from those records. *Id.* at 359 (citing *Moon*, 512 F.3d at 362).

Here, Schumacher was the person who collected, synthesized, and interpreted the data, and

she was available for cross-examination. Had counsel challenged Schumacher's testimony or the exhibits she presented under the Confrontation Clause, his challenge would have failed. His decision not to raise that challenge therefore could not have violated Castro-Aguirre's right to effective assistance. *See Long*, 847 F.3d at 920 ("When a petitioner alleges that counsel was ineffective for failing to move to suppress evidence," he must "'prove the motion was meritorious.'").

       2.    **Drug Evidence**

The results of the laboratory testing of the seized controlled substances were introduced by the parties' stipulation. Castro-Aguirre believes that counsel performed deficiently by failing to lodge an objection under the Confrontation Clause. By stipulating to the evidence, however, Castro-Aguirre waived his right to object to its admission. *Bullcoming*, 564 U.S. at 667. Stipulating to this evidence was a reasonable trial strategy, because, as the Supreme Court observed, insisting on live testimony has the effect of highlighting rather than casting doubt on the nature or quantity of the drug evidence. *Id.* Thus, counsel did not perform deficiently by not insisting on live testimony about the drug evidence.

**E.    Confrontation Clause Challenge at Sentencing**

Castro-Aguirre argues that his attorney was ineffective for failing to challenge the drug quantity finding, based on a laboratory report, at sentencing. (Dkt. 2 at 17−18.) The Sixth Amendment's Confrontation Clause does not apply to sentencing proceedings, so courts may rely on laboratory reports "despite the fact that the authors were not available for questioning." *United States v. Carnell*, 972 F.3d 932, 945 (7th Cir. 2020). Trial counsel was not ineffective for failing to object at the sentencing hearing, as any objection would have been overruled. *Perez*, 286 F. App'x at 331−32.

**F.**     **Shackles**

Next, Castro-Aguirre argues that his counsel provided ineffective assistance by failing to object to the visible shackles he wore during the trial.   As argued by the Government, nothing in the record suggests that Castro-Aguirre's shackles were visible.  (Dkt. 18 at 22−23.)   To the contrary, the Court went to great lengths to ensure the jurors were unaware of the restraints.  For safety reasons, the U.S. Marshals required leg restraints for all four defendants during the trial as all four were in custody.  The tables in the courtroom have floor-length draping which prevented the jurors from seeing under the tables.  Castro-Aguirre was seated before the jurors were brought into the courtroom, and the jurors were removed from the courtroom before he was permitted to leave.  Because his shackles were not visible to the jury during the trial, and Castro-Aguirre has presented no evidence that any of the jurors saw or heard the shackles, he has demonstrated no viable objection that counsel could have raised or any prejudice from the shackles.  *See United States v. Cooper*, 591 F.3d 582, 588 (7th Cir. 2010) (no plain error where shackles were not visible).

**G.**     **Severance**

Castro-Aguirre argues that his counsel provided ineffective assistance by not moving to sever his trial from the trial of his co-defendants.   In support of this argument, he contends that every defendant had different levels of participation and different roles in the offenses at issue.

Any motion for severance would have faced an uphill battle because there is a preference in the federal system for joint trials of defendants who are indicted together.  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).   As the Seventh Circuit has explained, "joint trials are beneficial not only for efficiency but because they limit inconvenience to witnesses, avoid delays in bringing defendants to trial, and allow the 'total story' to be presented to a single jury." *United States v.*

*Warner,* 498 F.3d 666, 699 (7th Cir. 2007).   Further, "there is a presumption that participants in a conspiracy or other criminal schemes should be tried together, not only to economize on judicial and prosecutorial resources but also to give the jury a fuller picture of the scheme." *United States v. Cardena,* 842 F.3d 969, 981 (7th Cir. 2016); *see also United States v. Chrismon,* 965 F.2d 1465, 1476 (7th Cir. 1992) ("[t]he presumption in favor of joint trials is especially strong when the defendants are charged with conspiracy.").   Joinder of defendants in cases involving drug distribution organizations is common.  *See, e.g., United States v. Rivera,* 825 F.2d 152, 159 (7th Cir. 1987) (upholding the denial of motion to sever of two defendants who sold drugs together). "[I]t is not enough merely to show that separate trials might have provided the defendant a better shot at acquittal." *United States v. Berg,* 714 F.3d 490, 496 (7th Cir. 2013).   Instead, the defendant bears the "heavy burden" of establishing that the joint trial "prevent[ed] the jury from arriving at a reliable judgment as to guilt or innocence." *United States v. White*, 737 F.3d 1121, 1133 (7th Cir. 2013).

Here, because Castro-Aguirre and the other defendants were engaged in the same acts and transactions, any motion for severance would have failed.  Castro-Aguirre was "the head of operations" who coordinated the shipments of the drugs and supervised the other defendants as they transported the drugs throughout the country.  *See Castro-Aguirre*, 983 F.3d at 932.  In short, all the defendants were part of the same conspiracy to sell the same drugs, and their actions were in furtherance of a common scheme, so joinder was proper.  *Cardena*, 842 F.3d at 981.  Because it is the Court's practice to try co-conspirators together in circumstances like these, Castro-Aguirre cannot show that trial counsel performed deficiently for failing to move to sever his case.  *See Meeks v. United States*, 105 F. App'x 834, 835 (7th Cir. 2004) (concluding trial counsel was not ineffective for failing to seek severance where Court of Appeals concluded on direct appeal, *United*

*States v. Meachum, et al.*, 182 F.3d 923, 1999 WL 511431, *1 (7th Cir. July 15, 1999), that joinder of co-defendants was proper under *Zafiro*, 506 U.S. 534)).

**H.   Ineffective Assistance of Counsel Claims Related to Admission of Evidence of Kidnapping and Murder**

Next, Castro-Aguirre raises several ineffective assistance of counsel claims related to the introduction of evidence about the kidnapping and murder of Angel Barrios-Moreno and two other men.  (Dkt. 2 at 24−28, 35−36.)  He contends counsel should have objected on prosecutorial misconduct, Fifth Amendment, and Sixth Amendment grounds.  *Id*.

Counsel did move to exclude evidence related to the kidnapping and murder before trial, arguing that the evidence was irrelevant and unduly prejudicial.  (Cr. Dkts. 581, 582 (Defendant Rojas-Reyes's Motions in Limine); Cr. Dkt. 639 (Order Denying Motion in Limine, in which Court observed that Castro-Aguirre had joined said motions).)  Counsel renewed the objection at trial. (Cr. Dkt. 815, Vol. 5 at 611−12 (renewing objection during trial).)

On appeal, the Seventh Circuit found that the Court abused its discretion in admitting this evidence.  *Castro-Aguirre*, 983 F.3d at 938.  Because the Court of Appeals agreed with defense counsel's objection, Castro-Aguirre cannot show that appellate counsel performed deficiently by not framing the argument under a different legal theory.  Further, Castro-Aguirre cannot show that the failure to present the argument differently would have changed the outcome of his trial.  The Seventh Circuit concluded that the introduction of this evidence was harmless:

> *Given the overwhelming nature of the evidence presented at trial regarding the defendants' guilt*, we cannot say that the jury would have found the prosecutor's case significantly less persuasive had the court kept out the evidence relating to Barrios-Moreno. Yesenia and Jesus Samaniego *provided uncontroverted testimony* connecting Castro-Aguirre, Ramirez-Prado, and Rojas-Reyes to multiple large drug transactions and identifying Carrillo-Tremillo as a major distributor. These two testified about each of the trips from Arizona to Indianapolis, as well as the trips from Arizona and Indianapolis to New York, New Jersey, and Pennsylvania. The government presented travel and financial records tying Carrillo-Tremillo and

17

Ramirez-Prado to the major drug routes the conspirators used, records from phones the DEA lawfully seized containing photographs and evidence of other connections among the defendants, drugs and cash seized from the defendants' cars and homes, and cell-site location data corroborating the other evidence showing the defendants' proximity during the relevant events. *We therefore find that the evidentiary error we have addressed is harmless.*

*Id.* at 938–39 (emphases added).  Given the overwhelming evidence against Castro-Aguirre, he cannot show that he was prejudiced by the introduction of this evidence. *See United States v. Allen*, 390 F.3d 944, 951 (7th Cir. 2004) ("Allen cannot overcome the prejudice prong of the test, for, even without the photograph, there was sufficient evidence to support his conviction."); *United States v. Rucker*, 766 F.3d 638, 647 (7th Cir. 2014) (observing that defendant could not prove prejudice prong of ineffective assistance of counsel analysis where court had already decided that there was sufficient proof to convict him).

## I.   **Introduction of CSLI Evidence**

Castro-Aguirre argues that trial and appellate counsel were ineffective by not properly challenging the admission of the CSLI evidence. (Dkt. 2 at 28−33.)  He argues that the good faith exception did not apply. *Id*.

Castro-Aguirre cannot show that either trial counsel or appellate counsel performed deficiently.  Both objected to the CSLI evidence, citing to the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), which was decided during Castro-Aguirre's trial.  In *Carpenter*, the court held that the government's procurement of cell phone location records are searches for purposes of the Fourth Amendment *and* that "the Government must generally obtain a warrant supported by probable cause before acquiring such records."  138 S. Ct. at 2221.

Castro-Aguirre and his co-defendants moved to suppress the CSLI as proceeds of an unlawful, warrantless search.  (Cr. Dkts. 580, 595.)  The Court denied the motions, finding that the defendants' cell phone records were admissible through the "good faith exception" to the Fourth

18

Amendment's exclusionary rule. (Cr. Dkts. 612, 616.) The Court specifically noted that Supreme Court precedent did not "apply to suppress evidence when the Government obtained the evidence while acting in objectively reasonable reliance on a statute that was subsequently declared unconstitutional." (Cr. Dkt. 612 at 6 (citing *Illinois v. Krull*, 480 U.S. 340, 349–53 (1987)).) The Seventh Circuit reached the same conclusion in *United States v. Curtis*, 901 F.3d 846 (7th Cir. 2018), and affirmed this Court's decision in denying Castro-Aguirre's direct appeal. *Castro-Aguirre*, 983 F.3d at 934–35. Counsel did not perform deficiently when they raised the Fourth Amendment argument, even though this Court and the Seventh Circuit found that the good faith exception applied. *See McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2018) (explaining that counsel may provide effective assistance of counsel "even if [a] strategy was ultimately unsuccessful").

Further, the "law of the case" doctrine forbids "a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal." *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Castro-Aguirre and his co-defendants litigated the Fourth Amendment issue— including the good-faith exception—on direct appeal. The Seventh Circuit deemed their challenge unmeritorious. Thus, whether framed as an ineffective assistance of counsel or a standalone challenge to the good faith exception, this claim fails.

## J.   <u>Failure to Challenge Sentence</u>

Castro-Aguirre's penultimate claim alleges that counsel performed deficiently by not challenging his life sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Dkt. 2 at 34−35.) Under *Apprendi*, and related cases, juries must find facts that increase the statutory minimum and maximum sentences. *Id.* Castro-Aguirre implies that the jury did not find him guilty of the quantity of drugs that would require a life sentence for the CCE charge. But that is

not true—the jury found him guilty both of the drug amounts and the CCE charge itself.  (Cr. Dkt. 669 at 10−11.)  Thus, counsel was not ineffective for failing to raise a frivolous argument.

## K.   **Cumulative Error**

Finally, Castro-Aguirre argues that the errors made by his counsel resulted in cumulative ineffective assistance of counsel.  (Dkt. 2 at 36.)  When an attorney has performed deficiently in several respects, the court is tasked with evaluating his performance as a whole and considering "the cumulative effect of counsel's errors[]" to assess whether the petitioner is entitled to relief. *Cook v. Foster*, 948 F.3d 896, 908 (7th Cir, 2020).  Because the Court has concluded that Castro-Aguirre's counsel was only deficient as to the double jeopardy claim, it need not engage in a cumulative error analysis.  *See Hough v. Anderson*, 272 F.3d 878, 891 n.14 (7th Cir. 2001) (noting "if there are no errors or a single error, there can be no cumulative error.").

## IV.  DENIAL OF CERTIFICATE OF APPEALABILITY

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; rather, he must first request a certificate of appealability.  *See Miller–El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014).  Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Castro-Aguirre has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" aside from the double jeopardy issue noted above and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

## V. **CONCLUSION**

For the reasons explained in this Order, Castro-Aguirre's § 2255 motion, Dkt. [1] **is GRANTED in part and DENIED** in part. It is **granted to the extent that** Castro-Aguirre is entitled to the issuance of an amended judgment that reflects Count 1 is dismissed, thereby reducing his special assessment by $100.00. The motion is **denied** as to all other claims. A copy of this Order shall be filed in Case No. 1:16-cr-00123-TWP-MJD-7. The **Clerk is directed to terminate** the motion to vacate in the criminal case (Cr. Dkt. [963]).

Judgment consistent with this Order shall now issue.

The **United States Probation Officer shall prepare** an Amended Judgment of Conviction which reflects the vacated Count 1 and the special assessment of $200.00.

**SO ORDERED.**

Date: 5/29/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Hector Saul Castro-Aguirre, #72343-408
BEAUMONT U.S. PENITENTIARY
Inmate Mail/Parcels
P. O. Box 26030
Beaumont, Texas 77720

Bradley A. Blackington
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
bradley.blackington@usdoj.gov

Electronic Notice to United States Probation Office

21